# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG <br><br> This document relates to: <br><br> 2:20-cv-2115-RMG <br><br> *State of New Mexico v. United States*, <br><br> No. 1:19-cv-00178 (D.N.M.) |

## THE STATE OF NEW MEXICO'S MOTION FOR LEAVE TO FILE MOTION FOR PRELIMINARY INJUNCTION

Come now Plaintiffs, the New Mexico Attorney General and the New Mexico Environment Department ("NMED") (collectively "Plaintiffs" or "the State"), through undersigned counsel, and ask this Court for leave to file a motion for preliminary injunction[1] to address per and polyfluoroalkyl substances ("PFAS") contamination at the Cannon Air Force Base near Clovis, New Mexico ("Cannon"), and the Holloman Air Force Base near Alamogordo, New Mexico ("Holloman"), caused by Defendants' releases of PFAS-containing aqueous film-forming foam ("AFFF").[2] The State previously filed a similar motion in the District of New Mexico, which was fully briefed and ready to be decided when the case was transferred to this MDL. That motion was dismissed without prejudice upon transfer. The State now seeks similar relief before this Court. The issues presented in the State's proposed motion are unique to its case, are fact specific,

---

[1] The State's proposed Motion for Preliminary Injunction and brief in support is attached hereto as **Attachment 1**.

[2] As required by Case Management Order No. 2A, the State requested that Plaintiffs' Co-Lead Counsel sign the proposed Motion. Although Co-Lead Counsel has declined to sign the State's proposed motion, they do not oppose the instant motion for leave. The State has also consulted with Defendants pursuant to Local Civil Rule 7.02 D.S.C., seeking to resolve the issues presented in the State's proposed Motion. To date, the issues have not been resolved. Defendants oppose the instant motion for leave.

and do not involve any of the core issues to be decided in this MDL. Thus, this Court may hear the State's motion and address the public health emergency presented at the Bases without disruption to other cases within the MDL and without creating a risk of inconsistencies in later rulings.

The levels of PFAS detected at Cannon and Holloman are shocking, and dangerous amounts of the contaminants have migrated into offsite wells that provide drinking water and livestock and irrigation water to the surrounding communities.[3] However, because Defendants have refused to take action to fully delineate the extent of the PFAS contamination at the Bases, it is not currently known how far into the neighboring communities Defendants' PFAS have travelled or how many people are currently being exposed to these toxic chemicals. Residents and businesses neighboring the Bases have already suffered catastrophic losses as a result of Defendants' PFAS contamination and others question whether they face the same fate, not knowing whether their wells or water supplies have also been affected. Certainly, more will suffer without immediate action.

Protection of the citizens of the State, as well as its natural resources, from dangers such as those posed by the contamination at Cannon and Holloman is of upmost importance to the State.[4] To protect the public from the immediate threat of exposure and the dangers associated therewith, it is necessary that Defendants delineate the extent of the contamination emanating from Cannon and Holloman so that the public can know whether they have been exposed to these toxins. Further, for those that do face the risk of such exposure, it is necessary that certain measures are immediately put in place to protect them from further harm. With no relief from this Court,

---

[3] As this Court is aware, exposure to PFAS, including per-fluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"), can be toxic, even at low levels.

[4] *See* Article XX, Section 21 of the New Mexico Constitution ("[P]rotection of the State's beautiful and healthful environment is . . . declared to be of fundamental interest to the public interest, health, safety and the general welfare.").

Defendants will continue to avoid their obligations and the public will continue to suffer. In its proposed motion, the State seeks narrowly tailored relief that would satisfy these immediate needs prior to a final ruling on the merits of the case and a determination of the full relief to be granted. As explained below, this Court should grant the State leave to file its proposed motion for preliminary injunction.

## BACKGROUND

Plaintiffs brought the instant lawsuit to obtain injunctive relief against Defendants to remedy decades-long and continuing releases of toxic chemicals at Cannon and Holloman pursuant to the New Mexico Hazardous Waste Act, NMSA 1978, §§ 74-4-1 to -14 ("HWA"), and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, *et seq.* ("RCRA"). The State's lawsuit was originally filed in the District of New Mexico on March 5, 2019. An amended complaint was filed on July 24, 2019. The case was transferred to this MDL on June 3, 2020.

PFAS have been detected at Cannon and Holloman at alarming levels, orders of magnitude above any state or federal health advisory limits, yet Defendants have refused to take actions to protect the public from exposure to these toxic chemicals. At Cannon, PFAS have been detected at levels as high as 14,320 parts per trillion ("ppt") at wells within a mile of the southeast corner of the base, which is nearly 204 times the U.S. Environmental Protection Agency's Health Advisory limit of 70 ppt. At Lake Holloman, located to the west of Holloman, PFOS was detected as high as 1,600,000 ppt, more than 22,000 times the EPA Health Advisory, and even greater still, PFOA was detected at levels as high as 5,900,000 ppt, more than ***84,000 times*** the EPA's Health Advisory.[5] Despite the exigent circumstances presented by these levels of contamination, Defendants have done nothing to remove the contamination from the environment or to stop the

---

[5] *See* Detection Summary for Lake Holloman Sampling, attached to the State's proposed Motion for Preliminary Injunction as **Exhibit E**; *see also* Certification of M. Laska, ¶¶ 48-50.

migration of the PFAS further away from the Bases or to protect residents and businesses from further exposure to the contaminants. For example, Lake Holloman remains open to the public even though PFAS have been found at levels more than 84,000 times the EPA Health Advisory and the State has requested that Defendants restrict access.

In an effort to obtain immediate relief to address the emergency situation present at the Bases, the State filed a Motion for Preliminary Injunction in the District of New Mexico on July 24, 2019. That motion was fully briefed and awaiting a decision from the court when this case was transferred to this MDL. Upon transfer, the State's motion was dismissed without prejudice pursuant to Case Management Order No. 2A (June 26, 2019) [ECF Doc. 130]. However, the need for emergency relief remains, and the State now asks that this Court hear its proposed motion for preliminary injunction, which can be heard and decided without disruption to other cases within this MDL.

## ARGUMENT

### I. THIS COURT MAY DECIDE THE STATE'S MOTION WITHOUT IMPACTING OTHER CASES IN THIS MDL.

The State's Motion "entail[s] unique factual or legal issues," and this Court the "has the discretion to address those issues through the use of appropriate pretrial devices," including a preliminary injunction. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (U.S. Jud. Pan. Mult. Lit. 2018). The issues presented in the State's proposed Motion are all fact specific, and thus, any ruling will not impact other cases in this MDL or present a risk of inconsistent rulings in the future.

*First,* a decision as to whether a preliminary injunction is proper requires analysis case-specific facts that would have no influence on any other cases in the MDL. In deciding whether to grant the State's motion for preliminary injunction, this Court must consider: (1) whether the

4

State is likely to succeed on the merits, which will include an analysis of whether the conditions at Cannon and Holloman present an imminent and substantial endangerment to human health and the environment; (2) whether the State, including its citizens and the environment, is likely to suffer irreparable harm; (3) whether the balance of hardships tips in favor of the State, and (4) whether the injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The answers to these questions are case-specific and would have no influence on any other cases in the MDL.[6]

***Second***, the State is seeking preliminary relief only pursuant to RCRA, which includes a clear and unambiguous waiver of sovereign immunity, *see* 42 U.S.C. § 6961.[7] Thus, no issues of sovereign immunity that would implicate cases in this MDL brought against the United States under state statutory or common law need be decided at this time.[8]

***Third***, the arguments that Defendants will raise in opposition to the State's motion will also require a factual inquiry into the specific circumstances of this case. Defendants will likely argue that the State's RCRA claim is barred by the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 113(h), as it had done in prior briefing before the District of New Mexico. Under CERCLA § 113(h), a federal court is denied jurisdiction only when asked "to review a removal or remedial action selected under section 9604" of the Act. 42 U.S.C. § 9613(h). This argument, however, will require an analysis as to whether (1) Defendants

---

[6] The State recognizes that there are other lawsuits pending in this MDL filed against Defendants that relate to the contamination at Cannon. *See Teuene v. United States*, Case No. 2:19-cv-03290-RMG (D.S.C.); *Schapp v. United States*, Case No. 2:19-cv-03288-RMG (D.S.C.). However, these lawsuits, filed by neighboring dairy owners, do not share any of the same causes of action as the State's complaint, and indeed, seek only monetary damages, whereas the State seeks solely injunctive relief. Thus, there are no legal issues in the cases that overlap, and thus, a decision on the State's proposed Motion would not have any impact on the outcome of those cases.

[7] Defendants did not challenge the State's ability to sue under RCRA in prior briefing before the District of New Mexico.

[8] Although in prior briefing Defendants had argued that sovereign immunity had not been waived as to the State's claims under the HWA, the State has not invoked and need not invoke the HWA to obtain the relief that it seeks in its proposed motion.

5

are in fact engaged in any remedial or removal actions at the Bases, and if so, (2) whether the State's action amounts to a challenge of those actions. This and other analyses required to decide the State's proposed motion would not require a resolution of legal issues that would be applied to other cases in the MDL, and thus, allowing the State to move forward with its motion would provide much needed relief to the citizens of the State without disrupting the goal of this MDL to provide for a swift and efficient resolution of the matters within.

## II.     IMMEDIATE RELIEF IS NEEDED TO PROTECT THE CITIZENS OF NEW MEXICO FROM FURTHER HARM.

As described above, PFAS have been detected both on- and off-site of at both Cannon and Holloman at extreme levels, yet Defendants have taken no action to halt the migration of these contaminants throughout the surrounding communities. Defendants affirmed that they used AFFF at Cannon and Holloman for more than 50 years in training and actual firefighting events at the Bases, during which time there were countless uncontrolled releases of AFFF throughout the Bases.[9] The release of PFAS into the environment through the use of PFAS-based AFFF at Cannon and Holloman caused contamination on and offsite in locations to which the contaminants migrated.

Air Force sampling also detected PFAS in off-base wells surrounding Cannon, which provide drinking water and livestock and irrigation water to local dairies. Air Force sampling showed a maximum of 539 ppt for PFOA in a neighboring dairy's well, and the dairy's own sampling detected a combined level of PFOS/PFOA of 14,320 ppt at an irrigation well, nearly 204 times the EPA's health advisory. A number of other dairies neighbor Cannon, as do residential communities and other important ecological resources, which are faced with an imminent risk of harm due to Defendants' PFAS releases and failure to control the spread of the same.

---

[9] *See* Certification of M. Laska in Support of the State's proposed Motion for Preliminary Injunction, ¶ 9.

At Holloman, PFOS and PFOA contamination has been confirmed in soil, sediment, and groundwater at Holloman at levels as high as 4,314 times the EPA's health advisory. At Lake Holloman, PFOA was detected at levels as high as 5,900,000 ppt, more than 84,000 times the EPA's health advisory, and PFOS was detected as high as 1,600,000 ppt, more than 22,000 times the EPA health advisory. Residents have already become ill and businesses have already collapsed as a result of exposure to these toxic chemicals, and that exposure will only continue, leading to further devastation, unless immediate action is taken.

A preliminary injunction is necessary to protect the people and the environment of the State. In the State's proposed motion, it requests only the limited relief that is immediately necessary to protect the public prior to a full resolution of the matter at trial. Specifically, the State requests that this Court enter an order requiring Defendants to (1) develop and implement a sampling plan at Cannon and Holloman to delineate the extent of the PFAS contamination at the Bases, and (2) implement interim measures necessary to protect the public health and prevent further harm. Such relief will "protect the status quo and [] prevent irreparable harm during the pendency of [the] lawsuit, [and] ultimately [] preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) (describing the goal of a preliminary injunction). Because contaminants remain in the environment at alarmingly high levels and continue to migrate with no restraints in place from Defendants, a preliminary injunction is needed to prevent further irreparable harm that is certain to manifest prior to a judgment on the merits can be rendered.

## **CONCLUSION**

The citizens of New Mexico continue to be exposed to an excess of toxic chemicals released at Cannon and Holloman, and Defendants refuse to take action protect the public from

7

exposure to these chemicals. The people of New Mexico need not wait for the common issues presented in this MDL to be resolved prior to obtaining preliminary relief necessary to protect their health and to which they are entitled. Accordingly, the State requests that this Court grant it leave to file its proposed Motion for Preliminary Injunction seeking relief necessary to prevent any further significant and irreversible injuries.

Dated: August 4, 2020

Respectfully submitted:

**HECTOR H. BALDERAS**
**NEW MEXICO ATTORNEY GENERAL**

/s/   P. Cholla Khoury_____
P. Cholla Khoury
William G. Grantham
Assistant Attorneys General
ckhoury@nmag.gov
wgrantham@nmmag.gov
Post Office Drawer 1508
Santa Fe, NM 87504
 (505) 717-3500

**NEW MEXICO ENVIRONMENT DEPARTMENT**

/s/ Christopher Atencio_____
Christopher Atencio
Assistant General Counsel
Jennifer Hower
General Counsel
Christopher.atencio@statem.nm.us
Jennifer.hower@state.nm.us
New Mexico Environment Department
121 Tijeras Ave. NE
Albuquerque, NM 87102
Phone: (505) 222-9554
Fax: (505) 383-2064

**KANNER & WHITELEY, L.L.C.**
Allan Kanner
Allison S. Brouk
Elizabeth B. Petersen
701 Camp Street
New Orleans, LA 70130
Tel.: 504-524-5777

*Counsel for Plaintiffs the State of New Mexico
and the New Mexico Environment Department*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2020, a true and correct copy of the foregoing Motion for Leave to File Motion for Preliminary Injunction was filed via the CM/ECF system, which will automatically send email notification to all counsel of record.

/s/   Allan Kanner_____

9