**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This document relates to:<br><br>*State of New Mexico v. United States*, No. 2:20-cv-2115-RMG |

**UNITED STATES' RESPONSE IN OPPOSITION TO
STATE OF NEW MEXICO'S MOTION FOR LEAVE
TO FILE MOTION FOR PRELIMINARY INJUNCTION**

The United States and the United States Department of the Air Force (collectively, "United States") submits this response in opposition to the New Mexico Attorney General's and the New Mexico Environment Department's ("NMED") (collectively, "New Mexico") Motion for Leave to File Motion for Preliminary Injunction ("Motion").[1]

New Mexico is seeking special treatment for its case, claiming its proposed preliminary injunction motion presents case-specific issues and is necessary to cure unique harms related to the Cannon and Holloman Air Force Bases that are purportedly going unaddressed. In reality, New Mexico's case does not involve unique or extraordinary risks. New Mexico neglects to mention that the Air Force is currently undertaking response actions at both Cannon and Holloman under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") as part of a coordinated nationwide effort to address PFOA and PFOS contamination from its facilities. In fact, New Mexico's requested relief is part of a collateral

---

[1] This response addresses only New Mexico's Motion, Doc. 66 (No. 20-cv-02115-RMG). The United States reserves its right to respond to New Mexico's proposed Motion for Preliminary Injunction, *see* Doc. 66-1 (No. 20-cv-02115-RMG), in the event the Court grants New Mexico's Motion.

attack on the Air Force's CERCLA response that would disrupt that coordinated national effort and prioritize actions at Cannon and Holloman, diverting the Air Force's limited resources away from response actions at other bases—some of which are involved in this MDL—that present their own health and environmental risks.  Section 113(h) of CERCLA prohibits any such suit, an issue common to many cases in this MDL.  Further, New Mexico's proposed motion raises other key legal and factual issues that implicate numerous other cases in the MDL.  This Court should resolve the CERCLA section 113(h) issue alongside the other threshold jurisdictional questions, including the United States' immunity under the Federal Tort Claims Act, and address any remaining issues in the due course of litigation rather than allowing New Mexico to jump to the head of the line.  The Motion should be denied.

## I.   Background

### A. The Air Force's Response to PFOA and PFOS at Its Bases under CERCLA

CERCLA is designed "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination."  *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (citation and internal quotations omitted).  Section 104 authorizes the President "to act, consistent with the national contingency plan ["NCP"]," by taking "response measure[s] if there has been a release or threatened release of "any … pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare."  42 U.S.C. § 9604(a)(1); 40 C.F.R. pt. 300.  The President may respond with "removal" actions—generally, short-term responses to mitigate threats and preliminary efforts to assess the nature, extent and threat of contamination—or "remedial" actions—*i.e.*, those taken instead of or in addition to removal action to provide a permanent remedy.  42 U.S.C. § 9604(a)(1); *id.* § 9601(24), (25).  CERCLA requires that such actions be based on an administrative record that is available to the public and provides opportunities for

input from interested parties—including state regulators—on selection of a remedy. *Id.* §§ 9613(k), 9621(f).

CERCLA section 113(h) directs that "[n]o Federal court shall have jurisdiction … to review any challenges to removal or remedial action selected under [CERCLA section 104]" except in limited circumstances. *Id.* § 9613(h). Section 113(h) "protects the execution of a CERCLA plan during its pendency from lawsuits that might interfere with the expeditious cleanup effort," thus promoting "CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites." *Cannon v. Gates*, 538 F.3d 1328, 1332 (10th Cir. 2008) (citations and internal quotations omitted); *see also Pollack v. U.S. Dep't of Def.*, 507 F.3d 522, 525 (7th Cir. 2007) (in enacting CERCLA section 113(h), Congress intended to ensure that contamination will be "cleaned up as quickly as possible and without interruption by citizen suits.").

The President has delegated Section 104(a) response authority to the Secretary of Defense to respond to contamination "where either the release is on or the sole source of the release is from any [military facility]." Exec. Order No. 12580 ¶ 2(e)(1), 52 Fed. Reg. 2923 (Jan. 23, 1987); *see also id.* ¶ 2(d). The Air Force is thus the lead agency for releases on or solely from its bases, including Cannon and Holloman. *See id.* Under that delegated authority and pursuant to the Air Force's Environmental Restoration Program ("ERP"), the Air Force is currently responding to PFOS and PFOA contamination as part of a nationwide initiative under CERCLA involving 203 military facilities, which includes all current and former Air Force (active and reserve) and Air National Guard facilities. Ex. 1, Declaration of William Brian Howard, ¶ 15 ("Howard Decl."). The Air Force has spent over $475 million on this program to date, including $10,715,333 at Cannon and $1,194,000 at Holloman. *Id.* ¶ 13.

3

Air Force CERCLA response actions follow the NCP, a prescribed, iterative process codified at 40 C.F.R. Part 300. The Air Force conducts a preliminary assessment and site inspection to identify potential release areas. *Id.* §§ 300.410, 300.420. If a further response is necessary, the Air Force conducts a comprehensive remedial investigation to identify and assess the extent of contamination to develop and evaluate remedial alternatives. *Id.* § 300.430(d). If warranted, the Air Force then conducts a feasibility study, which develops remedial options that protect human health and the environment based on required criteria. *Id.* § 300.430(e). The Air Force then selects and implements the final remedy based on a detailed analysis of the alternatives. *Id.* §§ 300.430(f), 300.435. Throughout the response process, the NCP provides numerous opportunities for input from the public and from relevant state authorities, including disclosure of information and solicitation of public comments. *See, e.g.*, 40 C.F.R. §§ 300.430(c), 300.435(c).

The Air Force's funding priority decisions for this initiative employ a "worst first" approach, addressing sites with greater relative risk to public safety, human health, and the environment before sites posing a lesser relative risk. Howard Decl. ¶ 18. Under its Relative Risk Site Evaluation ("RRSE") framework, the Air Force is currently using this approach for funding decisions for remedial investigations, the next phase in its CERCLA response for Cannon and Holloman. *Id.* ¶ 18. In addition, if at any point in this process the Air Force determines that PFOS and/or PFOA levels in drinking water exceed the U.S. Environmental Protection Agency's ("EPA") lifetime health advisories of 70 parts per trillion, the Air Force takes action under CERCLA to ensure drinking water is available that does not exceed those advisories. *Id.* ¶ 14.

4

### B. Prior Proceedings

New Mexico filed this case in the U.S. District Court for the District of New Mexico on March 5, 2019. As amended, New Mexico's complaint asserts claims under the Resource Conservation and Recovery Act ("RCRA") and state law alleging that PFOA and PFOS contamination from Cannon and Holloman Air Force Bases "presents an imminent and substantial endangerment to health and/or the environment." *See* Doc. 9 (No. 20-cv-02115-RMG) at 30-32. New Mexico seeks wide-ranging relief, including an injunction requiring "abatement of the conditions creating an imminent and substantial endangerment." *Id.* at 33.

On July 24, 2019, New Mexico moved for a preliminary injunction requesting substantially the same relief it seeks leave to pursue here. *See* Docs. 10-14 (No. 20-cv-02115-RMG). The United States filed a response and cross-motion for dismissal arguing, *inter alia*, that the court lacked subject matter jurisdiction over New Mexico's complaint because it was barred under CERCLA section 113(h) as an impermissible challenge to the ongoing section 104 response actions at Cannon and Holloman. *See* Docs. 31, 33 (No. 20-cv-02115-RMG). The District of New Mexico did not resolve these fully briefed motions prior to the case's transfer to this MDL on June 4, 2020.

## II. New Mexico's Proposed Motion for Preliminary Injunction Is Not Necessary to Protect Public Health or the Environment.

### A. The Air Force Is Already Addressing PFOA and PFOS Contamination at Cannon and Holloman.

New Mexico claims the preliminary injunction it seeks is necessary to prevent harm that "is certain to manifest prior to a judgment on the merits," and that "[w]ith no relief from this Court, Defendants will continue to avoid their obligations and the public will continue to suffer." Motion at 2-3, 7. But in fact, CERCLA response actions are already well underway at both Cannon and Holloman as part of the Air Force's comprehensive nationwide effort. New Mexico

5

fails to acknowledge that the Air Force has already conducted sampling for PFOA and PFOS at Cannon and Holloman—the results of which are publicly available[2] and are cited in New Mexico's own proposed motion for preliminary injunction[3]—and will conduct comprehensive remedial investigations for both sites to further assess the extent of contamination to develop and evaluate remedial alternatives. Kottkamp Decl. ¶¶ 17, 28. These actions are data-driven and are proceeding consistent with CERCLA and the National Contingency Plan. No data have been withheld from the State of New Mexico, which is an active participant in the CERCLA process for both bases. *See id.* ¶ 9 (noting New Mexico comments on Cannon site inspection work plan). While New Mexico may disagree with aspects of these actions, it is simply not true that contamination at Cannon and Holloman will go unaddressed absent the relief New Mexico is seeking.

At Cannon, the Air Force conducted a preliminary assessment in 2015 to identify areas of the base where firefighting foam was used. *Id.* ¶ 7. After the preliminary assessment was completed, the Air Force developed a site inspection work plan specific to Cannon, with investigation focusing on areas identified by the preliminary assessment and follow-on scoping visit. *Id.* ¶ 9. In relevant part, the Cannon site inspection included taking soil, sediment, surface water, and groundwater samples. Howard Decl. ¶ 15. The results, set forth in an August 2018 final site inspection report ("Cannon SI Report"), showed the presence of PFOS or PFOA in groundwater exceeding the EPA health advisory, as well as in on-base surface water. Kottkamp Decl. ¶ 11. The Cannon SI Report recommended proceeding with remedial investigations at

---

[2] The administrative records for both Cannon and Holloman are available at https://ar.afcec-cloud.af.mil/. The attached Declaration of Sheen Thomas Kottkamp includes detailed instructions on how to access specific documents. Ex. 2, Declaration of Sheen Thomas Kottkamp, ¶¶ 7, 9, 10, 13, 19-21 ("Kottkamp Decl.").

[3] *See* Doc. 66-1 (No. 20-cv-02115-RMG) at 9-11 (discussing results of site inspection reports).

eight areas and recommended an expanded site inspection to determine if there had been any off-site migration of PFOS or PFOA towards domestic wells. *Id.* ¶¶ 10, 12.

The Air Force evaluated the potential for down-gradient migration from some of the areas previously sampled. *Id.* ¶ 13. The Air Force installed a groundwater monitoring well at the boundary of Cannon to determine whether any PFOS or PFOA had migrated offsite. *Id.* The Air Force also promptly distributed information to potentially affected property owners within a four-mile down-gradient radius of the base boundary and sought authorization to sample their wells. *Id.* ¶¶ 13, 14  Additionally, the expanded site inspection included additional reconnaissance, including a door-to-door inventory survey to determine whether property owners used one or more wells for domestic purposes. *Id.*

At Holloman, the Air Force also conducted a preliminary assessment, published in September 2015. *Id.* ¶ 19. An additional scoping site visit was conducted in October 2016. *See id.* ¶ 20. Following these assessments, the Air Force identified specific areas for further investigation in a site inspection, the results of which are presented in a November 2018 final site inspection report ("Holloman SI Report"). *Id.* ¶ 21. The Air Force collected samples of soil, groundwater, surface waters, sediments, and effluent from the on-site waste water treatment plant, which showed the presence of at least one type of PFAS in surface water and groundwater exceeding the EPA health advisory. *Id.* However, the site inspection revealed no complete human health exposure pathways because the surface water and groundwater down-gradient of Holloman are not used for drinking water due to levels of total dissolved solids in excess of state standards. *Id.* ¶¶ 21, 24. The closest down-gradient drinking water wells are located 12 miles from Holloman, and no PFOS or PFOA was detected in them. *Id.* ¶ 25. Notwithstanding the lack of risk to drinking water, the Air Force informed the local community and Holloman

7

personnel about the presence of PFOS and PFOA and held multiple meetings with the various stakeholders. *Id.* ¶ 26.

The next step for both Cannon and Holloman is a remedial investigation under CERCLA. Based on their relative funding priority among the many other Air Force facilities requiring response actions under the RRSE ranking system, the remedial investigation at Cannon has been funded and is scheduled to begin in fiscal year 2021, and the remedial investigation at Holloman is tentatively scheduled to be funded in fiscal year 2022, subject to available funding. *Id.* ¶¶ 17, 28; Howard Decl. ¶ 19.

Further, the Air Force is not waiting to address immediate risks to human health. To the contrary, where current drinking water sources contain PFOS or PFOA exceeding EPA's lifetime health advisories of 70 parts per trillion, the Air Force has taken action under CERCLA to ensure affected humans have drinking water available that meets those health advisories.[4] Howard Decl. at ¶ 14. At Cannon, for example, where testing at three private wells detected PFOS or PFOA above EPA's lifetime health advisory of 70 parts per trillion, the Air Force offered bottled water as an alternative drinking water source, and is working toward permanent solutions, such as point of use filtration systems. Kottkamp Decl. ¶ 15-16.

In sum, the Air Force has taken concrete steps consistent with CERCLA to identify and address the risks of exposure from PFOS and PFOA at Cannon and Holloman. As of the summer of 2020, the Air Force has spent $10,715,333 and $1,194,000 at Cannon and Holloman,

---

[4] New Mexico also argues the Air Force should close "Lake Holloman" based on PFOA and PFOS contamination detected. Motion at 3-4. "Lake Holloman" is an evaporation pond for discharge effluent from Holloman's wastewater treatment plant. Kottkamp Decl. ¶ 23. This pond is owned by the U.S. Bureau of Land Management. *Id.* The Air Force operates the pond but does not have the authority to close it. *Id.* Prominently placed signs, however, inform the public that swimming is prohibited. *Id.*

8

respectively, as part of these response activities. Howard Decl. ¶ 13. To the extent that New Mexico disagrees with aspects of the Air Force's response to date and planned future actions, CERCLA provides numerous opportunities for state consultation and public input in response actions, and New Mexico will have an opportunity to participate in shaping the cleanup process and its execution. *See* 42 U.S.C. §§ 9613(k), 9617. CERCLA specifically requires "substantial and meaningful involvement by each State in initiation, development and selection of remedial actions to be undertaken in that State." *Id.* § 9621(f)(1). And the NCP requires frequent and meaningful state and community involvement. *See, e.g.*, 40 C.F.R. §§ 300.430(c), 300.435(c). The proper forum for New Mexico's disagreements is in that process. But New Mexico's displeasure with the pace of ongoing response actions does not justify granting preferential treatment to New Mexico's case in this MDL by allowing it to pursue a preliminary injunction.[5]

### B. New Mexico's Requested Relief Would Undermine Health and Environmental Goals by Disrupting the United States' Coordinated Nationwide Response.

As discussed in Section I.A above, the Air Force's response actions at Cannon and Holloman are not being undertaken in isolation. They are part of a nationwide effort to respond to PFOA and PFOS contamination under CERCLA at all 203 active and closed Air Force, Reserve, and National Guard installations across the United States. That effort has revealed that in addition to Cannon and Holloman, many other military facilities across the United States also present risks due to releases of these substances. The Air Force is actively addressing contamination at these sites through a coordinated national response effort. There are 88 active, reserve, and National Guard Air Force facilities that require remedial investigations under ERP funding. Howard Dec. ¶ 19. The Air Force is using a "worst first" approach to prioritize

---

[5] Indeed, CERCLA section 113(h) provides that this Court lacks subject matter jurisdiction to consider New Mexico's collateral attack on a section 104 response action at all. 42 U.S.C. § 9613(h).

9

funding for the remedial investigations at individual facilities based on the relative risks they pose to human health and the environment. *Id.* ¶ 18. New Mexico's proposed injunctive relief would divert and delay prioritized funding at sites with greater relative risk to human health and would disrupt the Air Force's data-driven response efforts.

In 2010, the Air Force began a comprehensive process under CERCLA to identify locations where PFOS and PFOA may have been released at or from its facilities. *Id.* ¶ 10. The Air Force has completed all preliminary assessments for its national response effort for PFOS and PFOA under CERCLA. *Id.* ¶ 15. The Air Force is proceeding through the site investigation phase and has initiated remedial investigations at installations where warranted. *Id.* Several of the sites involved in this effort are the subject of litigation that has been transferred to this MDL, including, *inter alia*, Peterson and Eielson Air Force Bases. *Id.* ¶ 19.

The Air Force's efforts discovered evidence of PFOA and PFOS contamination from Cannon and Holloman warranting response actions under CERCLA. Kottkamp Decl. ¶¶ 8-15, 19-25. However, the Air Force also determined that Cannon and Holloman do not merit the same level of prioritization within its nationwide response effort. Based on their respective sites scores under the Air Force's RRSE framework, Cannon has a higher prioritization for remedial investigation than Holloman. Howard Decl. ¶ 19. As a result, Cannon's remedial investigation has already been funded and is scheduled for implementation beginning in fiscal year 2021. *Id.* Reflecting its lower rating in the "worst first" evaluation, Holloman is currently scheduled to receive funding for a remedial investigation in fiscal year 2022. *Id.*

Likewise, the Air Force's efforts identified other facilities where site conditions warranted giving relatively higher priority to response actions. As noted above, Peterson and Eielson Air Force bases are also installations where the Air Force is responding to PFOS and

10

PFOA releases under CERCLA. *Id.* Under the RRSE, both bases were prioritized high enough for remedial investigation contracts to be awarded for Peterson in June 2020 and Eielson in August 2020. *Id.*

The Air Force's "worst first" approach allows it to best serve overall public health and environmental goals by directing its limited ERP funding and resources primarily towards those sites with the greatest relative risks. New Mexico's proposed preliminary injunction motion seeks to disrupt this orderly risk-based approach by forcing the Air Force to take additional steps at Cannon and Holloman ahead of schedule, without regard for the Air Force's need to allocate resources among numerous nationwide response actions. New Mexico's requested relief would divert the Air Force's limited resources away from addressing other sites also presenting risks, ultimately undermining the Air Force's broader efforts to protect public health and the environment nationwide. For example, requiring the Air Force to immediately begin a remedial investigation at Holloman would force the Air Force to take away funding from ongoing CERCLA response actions at installations that are a higher priority for funding under its "worst first" approach. *Id.* ¶ 20. Moreover, granting New Mexico leave to pursue its requested relief would only encourage other parties—both in this MDL and in cases not yet filed—to seek preliminary relief involving facilities that are part of the Air Force's nationwide response, further disrupting the orderly risk-based process that is underway. Nothing about New Mexico's case justifies granting it such preferential treatment.

### III.  Resolution of New Mexico's Proposed Motion for Preliminary Injunction Would Impact Other Cases in this MDL.

New Mexico argues that resolution of its proposed preliminary injunction motion "will not impact other cases in this MDL or present a risk of inconsistent rulings in the future." Motion at 4. But New Mexico's case is not as unique as it claims: indeed, it is not even the only

11

case in this MDL involving alleged contamination from Cannon. *See* Doc. 631 (master docket) ("JPML Transfer Order") at 2. In reality, this Court cannot resolve New Mexico's proposed preliminary injunction motion without addressing key issues raised in other cases in this MDL. *See id.* (resolution of New Mexico's preliminary injunction motion and United States cross-motion for dismissal "may well require resolution of factual and legal questions present in other actions pending in the MDL").

First, the JPML held in transferring New Mexico's case that other cases in this MDL present common issues with respect to "the United States' defenses to liability." JPML Transfer Order at 1. Notably, one of the United States' threshold defenses to the proposed preliminary injunction motion—and to New Mexico's claims in general—is that this Court lacks subject matter jurisdiction over New Mexico's case under CERCLA section 113(h), which bars courts from hearing challenges to removal or remedial actions selected under section 104. *See* Doc. 33 (No. 20-cv-02115-RMG) at 19-23 (responding to New Mexico's previous preliminary injunction motion); *Cannon*, 538 F.3d at 1331, 1336 (finding RCRA "imminent and substantial endangerment" suit seeking "to hasten the Government's cleanup efforts through injunctive relief" barred under section 113(h)). The United States is also raising this defense in several other cases involving facilities that are the subject of CERCLA response actions. *See* Doc. 244 (master docket) at 2 (listing section 113(h) among jurisdictional defenses it plans to raise).

Moreover, numerous other defendants have notified the Court that they will or may assert section 113(h) defenses in their own cases. *See, e.g.*, Doc. 149 (master docket) (Tyco Fire Products, LP and Chemguard, Inc. preliminary statement of affirmative defenses); Doc. 150 (master docket) (3M Company preliminary statement of affirmative defenses); Doc. 256 (master

12

docket) (Port Authority of New York & New Jersey statement of affirmative defenses); Doc. 259 (master docket) (New York State Defendants preliminary statement of affirmative defenses).

This Court could not resolve New Mexico's proposed preliminary injunction motion without first resolving the United States' jurisdictional arguments under section 113(h), which could impact the other cases in this MDL in which the United States and other defendants are raising that defense. Accordingly, the Court should not allow New Mexico to jump the line and force resolution of that issue now. It would be more appropriate to address the section 113(h) defenses asserted in this MDL together with other jurisdictional defenses the Court is already planning to address at an early stage in these proceedings.

Second, the JPML already rejected New Mexico's contention that the factual issues raised in its preliminary injunction motion, and in its case in general, are "case-specific." Motion at 4; *see* JPML Transfer Order at 2. Indeed, one of the key issues raised in New Mexico's Motion—namely, the toxicity of PFOA and PFOS and their effects on health at various concentrations—is common to every case in this MDL. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

Finally, the fact that New Mexico is a sovereign state does not make its case unique. *See* Motion at 2 & n.4. As was recently noted at the August 7, 2020 status conference, New Mexico is only one of several sovereign plaintiffs currently in this MDL, with more states potentially joining in the future. *See* Doc. 752 (master docket) at 6-7 (listing, by way of example, New Jersey, New Hampshire, Guam, Vermont, Ohio, and New York). Allowing New Mexico to seek preliminary relief by virtue of its sovereign status would only encourage other state plaintiffs to do the same.

## CONCLUSION

The Court should deny New Mexico's Motion for Leave to File Motion for Preliminary Injunction.

Respectfully submitted,

Dated: August 17, 2020

  *Andrew D. Knudsen*
ANDREW D. KNUDSEN
SHARI HOWARD
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-7466
andrew.knudsen@usdoj.gov
shari.howard@usdoj.gov

CHRISTINA M. FALK
Assistant Director
Environmental Torts Section, Civil Division
U.S. Department of Justice
175 N Street NE
Washington, D.C. 20002
(202) 616-4216
(202) 616-4474 (fax)
christina.falk@usdoj.gov

*Counsel for United States and U.S. Air Force*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all known counsel of record.

/s/ Andrew D. Knudsen
ANDREW D. KNUDSEN