**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document Relates to Case No.:<br>2:20-cv-2115-RMG<br>*State of New Mexico v. United States* |

**DEFENSE COORDINATION COMMITTEE'S RESPONSE TO
THE STATE OF NEW MEXICO'S MOTION FOR LEAVE
TO FILE MOTION FOR PRELIMINARY INJUNCTION**

The Defense Coordination Committee ("DCC") opposes the State of New Mexico's Motion for Leave to File a Motion for Preliminary Injunction (ECF No. 735).[1] Despite the State's disclaimers, its proposed motion for preliminary relief under the citizen-suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), raises contested issues regarding the alleged toxicity of PFAS that are common to all of the cases in this MDL. It also raises other issues that are common to a significant subset of cases. Resolution of those issues at this time is premature, would undermine the orderly handling of this litigation, and could prejudice other cases involving the same issues. Accordingly, the DCC requests that the Court deny the State's Motion for Leave.

**ARGUMENT**

The State's proposed motion (ECF No. 735-1) is substantially identical in relevant respects to a motion for preliminary injunction that it previously filed and briefed in the District of New Mexico before the Judicial Panel on Multidistrict Litigation ("JPML") transferred the action to this

---

[1] The DCC, through Defendants' Co-Lead Counsel, files this response as directed by the Court's Order of August 5, 2020 (ECF No. 736).

1

Court.² *See State of New Mexico v. United States*, No. 1:19-cv-00178-KWR-JFR (D.N.M.), ECF Nos. 10 & 11 (July 24, 2019). As the JPML noted when it transferred the case, the State's request for preliminary relief "may well require resolution of factual and legal questions present in other actions pending in the MDL." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* (J.P.M.L.), ECF No. 650 at 2 (June 6, 2020). The State's proposed motion here confirms the validity of that observation and belies the State's assurances that its request for preliminary relief involves only issues "unique" to its case. ECF No. 735 at 1, 4.

**Alleged Toxicity of PFAS**

The proposed motion asks this Court to resolve disputed issues regarding the alleged toxicity of PFAS that are at the heart of this litigation.

To qualify for preliminary relief, the State must demonstrate that it is likely to prevail on the merits. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The State's RCRA claim requires proof that the substances at issue constitute "solid waste" or "hazardous waste"; and that their presence poses a "substantial present or potential hazard to human health or the environment." 42 U.S.C. § 6972(a)(1)(B). The State contends that PFAS on and near the two Air Force bases constitute hazardous waste as well as solid waste. ECF 735-1 at 25–26. RCRA defines hazardous waste as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) *cause, or significantly contribute to an increase in serious irreversible, or incapacitating reversible, illness*; or (B) *pose a substantial present or potential hazard to human health* or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C.

---

² The earlier motion sought relief under both RCRA and the New Mexico Hazardous Waste Act, whereas the current proposed motion invokes only RCRA. That difference is immaterial for present purposes.

§ 6903(5) (emphasis added).  Although the State alludes in places to the alleged harms of PFAS to flora and fauna, its central theory is that PFAS at the bases qualify as hazardous waste because they "cause severe damage to human health."[3]   ECF 735-1 at 20 (heading).   On the separate element of "substantial present or potential hazard to human health or the environment," the State likewise focuses on the alleged fact that PFAS are "extremely toxic chemicals that are known to adversely affect human health."  *Id.* at 26.  The State's factual support for its position on the toxicity of PFAS to humans consists principally of a declaration from a consultant who addresses the issue in a single conclusory sentence.  *See* ECF 735-1 at 54, ¶ 15 ("There is substantial and mounting evidence documented in peer-reviewed, scientific journals indicating that PFAS pose significant human health and ecological risks that include: developmental issues, low birth weight, decreased fertility, hormone disruption, immune system damage, and increased cancer risk.").

     Thus, the State's proposed motion asks this Court to resolve the issue of whether environmental concentrations of PFAS cause harm to human health. That is an issue common to every case in this MDL, whether based on RCRA, common-law theories, or other legal grounds.  The JPML noted that point in centralizing these cases: "These actions thus share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health."  *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  The State tries to pretend that the harmfulness of PFAS is a matter of settled science.  *See, e.g.*, ECF 735 at 2 n.3.  But as the Agency for Toxic Substances and Disease Registry affirmed as recently as nine months ago, "the evidence does not establish a causal relationship between PFAS exposure and disease."  Ex. 1 at 11.  The issue is a hotly disputed one in this litigation.  The Court should not

---

[3]  Even if the State focused solely on the alleged toxicity of PFAS to flora and fauna, that would be an issue common to a number of cases in this MDL filed by other States seeking damages for claimed harms to natural resources.

decide it now on a meager record in the context of one plaintiff's request for preliminary relief against one defendant. Rather, the Court should address the issue only after relevant discovery has been completed and counsel representing all interested parties have the opportunity to make full evidentiary presentations (including, if appropriate, challenges to the admissibility of other parties' proffered evidence).

**Other Common Issues**

The State's proposed motion raises additional issues that are shared in common with at least some other cases in this MDL.

In response to the State's earlier motion for preliminary injunction in the District of New Mexico, the United States cross-moved to dismiss the State's RCRA claim on the ground that it is jurisdictionally barred by Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), as an impermissible challenge to the Air Force's ongoing CERCLA response actions at the bases.[4] *See* Ex. 2 at 22–26. The United States will presumably raise the same defense if the State is allowed to file its proposed motion here. That defense is not unique to this action. In its Preliminary Statement of Defenses, the United States identifies preclusion under Section 113(h) as one of two jurisdictional defenses it has that "affect a substantial number of claims, including potentially all claims" against it. ECF 244 at 1–2. As with the question of the alleged toxicity of PFAS, the Court should not decide the applicability of Section 113(h) until there is an appropriately developed factual record and all affected parties have an opportunity to present evidence and argument.

Finally, any decision on the State's proposed motion would inevitably have a major impact on four cases in this MDL filed by private plaintiffs concerning alleged harms from PFAS

---

[4] CERCLA § 113(h) provides that "[n]o Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action selected under section 9604."

contamination at one of the very sites at issue in the State's case, Cannon Air Force Base. In two of those cases, the plaintiffs have sued certain federal defendants. *Schaap v. United States*, Case No. 2:19-cv-03288-RMG (D.S.C.); *Teune v. United States*, Case No. 2:19-cv-03290-RMG (D.S.C.). In the other two cases, the plaintiffs have sued various manufacturing defendants. *Schaap v. 3M Co.*, Case No. 2:19-cv-01644-RMG (D.S.C.); *Teune v. 3M Co.*, Case No. 2:19-cv-01645-RMG (D.S.C.). The putative facts as to Cannon Air Force Base in the State's case are the putative facts in the private-plaintiff cases as well, even if the private plaintiffs assert different injuries and causes of action. Any rulings in the State's case would necessarily affect the other cases. Again, the Court should not address the issues until there is an adequate factual record and all affected parties have an opportunity to be heard.

\*     \*     \*

The State asserts that resolution of its proposed motion for preliminary injunction would not disrupt this MDL because "[t]he issues presented in the State's proposed Motion are all fact specific, and thus, any ruling will not impact other cases in this MDL." ECF 735 at 4. Even if the State's premise were correct, the conclusion would not follow. Of course, every case has its own distinctive facts. But nobody doubts that rulings and verdicts in bellwether cases, for instance, can have a significant impact on other cases in an MDL even though bellwether cases involve their own facts. Rulings in one case can affect other cases involving the same subject matter even if the facts are not identical. They can influence parties' assessment of other cases by resolving similar issues in a particular way; or by giving more or less weight to particular arguments or genres of evidence. Resolution of the State's proposed motion would have those effects, at a time when discovery is incomplete and other interested parties are in no position to present fully supported positions on common issues.

5

## **CONCLUSION**

The State, like many another MDL plaintiff, would like to move its case to the front of the line for the Court's consideration. But the rationale behind this and every MDL is that the interests of litigants *as a group* are better served by deferring consideration of common issues until the record is appropriately developed. Indulging the State's request for expedited consideration would require the Court to prematurely address critical common issues and thereby disrupt the orderly progress of this litigation.[5] For that reason, the Court should deny the State's Motion for Leave.

Respectfully submitted,

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
P: (202) 434-5000
F: (202) 434-5547
jpetrosinelli@wc.com

Michael A. Olsen
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
P: (312) 701-7120
F: (312) 706-8742
molsen@mayerbrown.com

*Co-Lead Counsel for Defendants*

---

[5] Although the Court has not requested the DCC to address the merits of the State's proposed motion for preliminary relief, we note that the United States' briefing in the District of New Mexico persuasively demonstrates that the State does not in fact face the prospect of irreparable harm if preliminary relief is denied at this time. *See* Ex. 2 at 32–35.

7

Brian Duffy
DUFFY & YOUNG LLC
96 Broad Street
Charleston, SC 29401
P: (843) 720-2044
F: (843) 720-2047
bduffy@duffyandyoung.com

David E. Dukes
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
P: (803) 255-9451
F: (803) 256-7500
david.dukes@nelsonmullins.com

*Co-liaison Counsel for Defendants*

August 17, 2020