UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br><br>*State of New Mexico v. United States*<br>No. 2:20-cv-2115-RMG<br>No. 1:19-cv-00178 (D. N.M.) |

**THE PEC'S RESPONSE TO STATE OF NEW MEXICO'S MOTION FOR LEAVE TO FILE MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to the Court's directive of August 5, 2020 to comment on the State of New Mexico's Motion for leave to file a motion for preliminary injunction (ECF No. 736), the Plaintiffs' Executive Committee ("PEC") submits this response pertaining to the State of New Mexico request to proceed with a motion for preliminary injunction.

The State of New Mexico ("New Mexico" or the "State") filed a motion for leave to file a motion for preliminary injunction on August 4, 2020. New Mexico contends that exigent circumstances exist for it to pursue injunctive relief because PFAS has been detected at water wells in excess of U.S. Environmental Protection Agency's Health Advisory limit of 70 ppt. The State wants to obtain a sampling plan at Cannon and Holloman Air Force Bases, and additional relief, so-called "interim measures," including medical surveillance in the form of blood testing of residents to quantify their exposures to known and suspected PFAS used at the Bases. New Mexico contends that its underlying motion is fact specific, unique, and removed from any of the core issues to be decided in this MDL. It further contends that granting its motion will not result in disruption to other cases in the MDL, albeit acknowledging that there

1

are, in fact, other lawsuits in the MDL involving the same Defendants and their activities at the Cannon Air Force Base.  New Mexico casts aside the factual identity of these cases by noting that those cases are pursuing monetary damages and that the State's interest only in injunctive relief will result in no legal issues in the cases that overlap.

As the extraordinary presence of PFAS has been detected at myriad sites around the country, including those of many other plaintiffs in this litigation, including the two specifically identified by New Mexico, the presence of excessively elevated levels of PFAS contamination at the Bases in New Mexico alone, while concerning like so many other sites around the country, is not compelling to warrant the relief sought at this time.  New Mexico's attempts to dismiss the many overlapping factual and legal issues that will occur in its individual cases is superficial at best.  The likelihood of New Mexico to succeed on the merits of its claims under the New Mexico Hazardous Waste Act, NMSA 1978, §§ 74-4-1 et seq. ("NMHWA") and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq. ("RCRA") against the United States involve testing many of the same core facts and legal theories applicable to the many cases in the MDL.  For example, the governmental contractor defense anticipated in this litigation and the blood testing relief sought by New Mexico implicates the merits of many of the various plaintiffs' medical monitoring claims in the MDL.  Therefore, it is simply not accurate to assert, as New Mexico does,  that there will be no impact on the outcome of any of the other cases in this MDL.

Thus, while the PEC is cognizant and supportive of the State's goals, prioritizing one party's claims over another in the context of a complex litigation, like this, with so many cases and various claims that impact public health and safety, under the confines of case management protocols the and managing the development, prosecution, and advancement of the overall

litigation, the PEC submits that it is difficult to put preferences or advancement of issues for one particular party over another.  Indeed, the PEC has been trying to advance a trial date and bellwether trial schedule since last year, and even advancing this process has required significant development and inter-play with other developing issues.

### NEW MEXICO'S MOTION WILL IMPACT THE PLANNED PROCEEDINGS OF THIS MDL

Apart from New Mexico's desire to advance its case over others, which many plaintiffs in this MDL actively request of the PEC leadership, the PEC, regrettably, perceives no justification for this motion seeking to prioritize the State's claims over other plaintiffs. Allowing New Mexico to circumvent the Court's carefully crafted procedures could set a burdensome and challenging precedent.  This Court has previously noted the importance of coordinated MDL proceedings.  Taking just one example, at the February 20, 2020 Status Conference, this Court rejected a similar argument by counsel for New Mexico that it should be exempted from the MDL procedures, stating that discovery proceedings in an MDL must be coordinated and deliberative:  "And obviously, an MDL does not move with the velocity of an individual case.  You give up a little bit of that when you're in an MDL.  But you're looking for how to coordinate litigation in all 93 judicial districts in the country."  *See* February 7, 2020 Transcript of Status conference, p. 55-56.  *See also In re Aqueous Film-Forming Foams Prod. Liab. Litig.,* No. 2:18-MN-2873-RMG, 2019 WL 2807266, at *4 (D.S.C. May 24, 2019) (rejecting a remand request by the State of New York, the Court noted an important part of these MDL proceedings is to "ensure" that the parties "engage in efficient and centralized discovery.").  Denying the State's motion would be consistent with the approach from the Court's ruling at the February 7th Status Conference and in its May 24, 2019 Opinion

3

Indeed, if New Mexico's motion was successful, other parties would then be tempted and encouraged to file similar motions, unnecessarily taxing the Court and diverting the defendants and possibly the U.S. government in their discovery efforts and other pre-trial efforts, including ongoing document review and responses to written discovery. Likewise, the PEC could be distracted from its mission and the "host of functions" it is performing in order to "coordinate discovery and other pretrial preparation" in this MDL. *See* Manual Complex Lit. § 22.62 (4th ed. 2020) (functions assigned to lead counsel in MDL litigation include: "develop proof of liability and anticipate defenses; gather the expertise necessary to prove causation and other elements of plaintiffs' cases; trace patterns of exposure; manage discovery; coordinate the various filings; and communicate with counsel for plaintiffs, counsel for defendants, and the court."). Moreover, the PEC and the defendants are all presently focused on addressing general liability issues, including the Governmental Contractor defense that is being asserted by many of the defendants, and organizing and selecting water provider and other plaintiffs for an orderly and efficient bellwether trial process.[1] In the past this Court has refused to allow individual plaintiffs to try to seek some sort of litigation leverage in this MDL proceeding. *See* Order of May 28, 2020 (denying Town of East Hampton motion for leave to move for preliminary injunction) (ECF No. 612). The same rationale would likely apply here.

It is important to highlight that the PEC is supportive of state/sovereign claims. We have a designated state/sovereign liaison counsel on the PEC, William Jackson. As noted in footnote 1, the PEC's bellwether proposal (tendered to the defense on July 29, 2020, included a specific

---

[1] Indeed, the PEC submits that while discovery on the general liability and government contractor defense is advancing, the time has arrived for the Court, with the input of the parties, to embark on the bellwether process for the overall advancement of the litigation, so that legal issues can be tested (as needed), and cases can be advanced for bellwether trials before this Court and remanded as necessarily sought.

4

bellwether track for the state/sovereign plaintiffs, albeit behind the water provider plaintiffs track, but only because the state/sovereign plaintiffs were delayed in negotiating and agreeing to the Plaintiff Fact Sheet).

Given the complexities of administering the MDL docket and the importance of properly sequencing trial and general litigation priorities of the various issues and multiple defendants, the PEC is constrained by these concerns and the many activities occurring in the MDL to prioritize any one claimant at this time. Accordingly, the PEC recommends that New Mexico's pending motion be denied without prejudice.

Respectfully submitted,

Dated: August 17, 2020

*s/ Fred Thompson III*
Fred Thompson III
Motley Rice
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9118
fthompson@motleyrice.com

***Plaintiffs' Liaison Counsel***

Michael A. London
Douglas and London PC
59 Maiden Lane, 6th Floor
New York, NY 10038
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

Paul J. Napoli
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
212-397-1000
646-843-7603 (fax)
pnapoli@napolilaw.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

*Plaintiffs' Co- Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 17th day August, 2020 and was thus served electronically upon counsel of record.

/s/ Fred Thompson, III